IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 2:06-cv-2649-GEB-GGH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| THE STATE OF CALIFORNIA, and | ) | |
| EDMUND G. BROWN, JR., in his | ) | |
| capacity as Attorney General for | ) | |
| the State of California, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

        Defendants move to amend the Rule 16 Scheduling Order so
that they can seek leave to join as Defendants the Central Valley
Chapter of 7th Step Foundation, Inc., Bart Blackburn, James Doe,
Ronald Roe, and George D. Turner ("Central Valley Parties").[1]
Plaintiff and Defendants cross move for summary judgment on all claims
and Plaintiff seeks a permanent injunction.  Oral argument on the
summary judgment motions was held on July 23, 2007.

---

[1]    All references to "Rules" are to the Federal Rules of Civil
Procedure.

BACKGROUND

1

2          On November 21, 2006, the United States filed this action

3    on behalf of the Office of Personnel Management ("OPM") asserting

4    federal law (specifically, 5 U.S.C. § 9101) requires Defendants to

5    disclose an individual's complete criminal history record information

6    ("CHRI") to OPM and its contract investigators conducting background

7    investigations for employment, contracting and security clearance

8    purposes.  (Pl.'s Compl. at 1, 2.)  Defendants counter that permanent

9    state court injunctions ("the injunctions") forbid Defendants from

10   disclosing all of the requested information, arguing that the

11   injunctions prohibit Defendants from releasing any record of an arrest

12   that is later deemed a "detention" under state law, any record of an

13   arrest when the arrestee subsequently completed a diversion program

14   under state law, or any record of an arrest which did not result in a

15   conviction.[2]  Second, Defendants argue that disclosure of these

16   records is prohibited by federal law and violates the arrestee's right

17   to privacy in the United States Constitution and the California

18   Constitution.  Finally, Defendants argue that § 9101 does not

19   authorize disclosure of CHRI to contract (as opposed to OPM)

20   investigators.  (Defs.' Answer ¶¶ 40-42.)

21          OPM is a federal agency authorized to conduct background

22   investigations for the Federal Government.  (Decl. of Kathy Dillaman

23   in Supp. of Pl.'s Mot. for Summ. J. ("Dillaman Decl.") ¶ 3.)  In 2006,

24   OPM performed 1.8 million background investigations.  (Id. ¶ 5.)  As a

25   _____

26      [2]    The injunctions were issued in a series of orders granting
     summary adjudication, and in the final ruling, in Central Valley Chapter
27   of the 7th Step Foundation, Inc., v. Younger, No. 497394-6 (Cal. Super.
     Ct. Alameda, July 29, 1985).  See id. (Nov. 18, 1982 order granting
28   permanent injunction); id. (Nov. 22, 1982 order granting permanent
     injunction); id. (June 7, 1984 order granting permanent injunction).

2

1  result of the large number of investigations that must be completed,

2  OPM uses private contractors to perform 75 percent of them.  (Id. ¶

3  4.)  These contract investigators must obtain an appropriate OPM

4  clearance, complete OPM approved training, and comply with security

5  requirements specifying how records are stored and handled.  (Decl. of

6  Joyce Tincher-Harris in Supp. of Pl.'s Mot. for Summ. J. ("Tincher-

7  Harris Decl.") ¶¶ 9, 11.)  Before OPM conducts a background

8  investigation, the applicant signs a release form stating that the

9  applicant authorizes representatives of OPM to obtain the applicant's

10  CHRI.  (Decl. of John Czajkowski in Supp. of Pl.'s Mot. for Summ. J.

11  ("Czajkowski Decl.") ¶ 4.)

12          In April 2006, Defendant California Department of Justice

13  ("CA DOJ") sent OPM a letter explaining that California law only

14  allows disclosure of CHRI to public officials and prevents CA DOJ from

15  disclosing any CHRI to OPM's private contractor investigators.  (Pl's.

16  Compl. Ex. 1.)  This letter also states that California law only

17  allows the disclosure of arrests "that have resulted in convictions

18  and arrests [that are] pending adjudication."  (Id.)  Defendants,

19  therefore, adopted the policy that discloses only incomplete CHRI

20  ("summary CHRI") to OPM staff, and have refused to disclose any CHRI

21  to OPM's private contract investigators.  (Czajkowski Decl. ¶¶ 8, 11.)

22  OPM declares Defendants' refusal to provide complete CHRI to their

23  contract investigators has caused significant delays in the background

24  investigative process.  (Id. ¶ 10.)

25                              DISCUSSION

26  I.   Motion to Amend the Rule 16 Scheduling Order

27          Defendants seek amendment of the provision in this action's

28  Rule 16 Scheduling Order which provides that "[n]o further . . .

1 joinder of parties or amendments to pleadings is permitted, except

2 with leave of Court, good cause having been shown."  (Order, Mar. 7,

3 2007, at 1.)  If their motion to amend is granted, they also seek

4 leave under Rule 20 (permissive joinder of parties) to join the

5 Central Valley Parties as Defendants.  (Defs.' Mot. to Amend at 1-2.)

6          Defendants assert good cause exists to amend the Rule 16

7 Scheduling Order because they could not reasonably foresee the

8 necessity of joining the Central Valley Parties when they filed a

9 Joint Status Report on February 26, 2007.  (Defs.' Mot. to Amend at

10 5:24-25.)  Defendants assert that it did not "bec[o]me apparent to

11 Defendants that the Central Valley [Parties] might seek to still

12 enforce the injunctions in state court" until May 2007, when the

13 Central Valley Parties stated that they would "insist upon compliance

14 with the injunctions" irrespective of the ruling ultimately issued in

15 this action.  (Defs.' Mot. to Amend at 6:9-12; Decl. of Hiren Patel in

16 Supp. of Defs.' Mot. to Amend ("Patel Decl.") ¶¶ 3-4.)

17          Plaintiff counters that good cause does not exist because

18 the injunctions have been in place since 1985 and Defendants have

19 known about the injunctions since the commencement of this action.

20 (Pl.'s Opp'n to Mot. to Amend at 2:23-25.)  Defendants rejoin, even

21 though they knew about the injunctions, they only became aware joinder

22 was necessary once the Central Valley Parties indicated they would

23 seek to enforce those injunctions.  (Defs.' Reply in Supp. of Mot. to

24 Amend at 2:26-28.)

25          To amend the provision in the Rule 16 Scheduling Order

26 prescribing "[n]o further . . . joinder of parties or amendments to

27 pleadings is permitted," Defendants "must first show 'good cause' for

28 [the] amendment under Rule 16(b)."  <u>Johnson v. Mammoth Recreations,</u>

1 | Inc., 975 F.2d 604, 608 (9th Cir. 1992).  Rule 16(b)'s "good cause"

2 | standard focuses on the diligence of the party seeking the amendment.

3 | Id. at 608-09.  "If that party was not diligent, the inquiry should

4 | end."  Id. at 609.  A diligence inquiry under this standard is whether

5 | the movants discharged their obligation "to collaborate with the

6 | district court *ab initio* in fashioning" a workable Rule 16 Scheduling

7 | Order for the case which would not have to be amended.  In re San Juan

8 | Dupont Plaza Hotel Fire Litig., 111 F.3d 220, 229 (1st Cir. 1997);

9 | Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999).

10 |      If Defendants were aware, or should have reasonably been

11 | aware, when they submitted their Joint Status Report, of circumstances

12 | that could lead to a request to join parties, they should have asked

13 | that said joinder be allowed under the more liberal joinder standard

14 | in Rule 20 or that amendment to the pleadings be allowed under the

15 | more liberal amendment standard in Rule 15.

16 |      Parties anticipating possible amendments . . .
have an 'unflagging obligation' to alert the Rule
17 | 16 scheduling judge of the . . . timing of such
anticipated amendments in their status reports so
18 | that the judge can consider whether such
amendments may properly be sought solely under the
19 | Rule 15(a) standard, and whether structuring
discovery pertinent to the parties' decision
20 | whether to amend is feasible.  See Veranda Beach
[Club Ltd. P'ship v. W. Sur. Co.], 936 F.2d
21 | [1364,] 1371 [(1st Cir. 1991)]; 3 Moore's Federal
Practice at § 16.36[3][c] ("Addressing these
22 | matters assertively early in the pretrial period
. . . [is] essential to coherent case development
23 | planning, and can avoid the delays and the
wasteful repetition of discovery events that are
24 | often occasioned by amendments made later in the
pretrial period.").

25 |

26 | Jackson v. Laureate, Inc., 186 F.R.D. at 608.  Under such

27 | circumstances, failure to make this request in their Joint Status

28 | Report would constitute, at a minimum, "carelessness [which is not]

compatible with a finding of diligence and offers no reason for a

grant of relief."  Id. (quoting Johnson, 975 F.2d at 609).

The Deputy Attorney Generals essentially are acting as

permanent corporate counsel for the State of California and actually

stand in the shoes of the Attorney General.  See People v. Birch Sec.

Co., 86 Cal. App. 2d 703, 707 (1948).  Defendants stated as their

second affirmative defense in their answer, filed January 10, 2007,

that "Defendants are bound by a permanent injunction forbidding

disclosure, for purposes of evaluating applications for employment or

licensing, of arrests that were deemed 'detentions,' or which resulted

in a successful diversion or for which there is no disposition."

(Defs.' Answer ¶ 40.)  Therefore, Defendants' argument that they were

unaware until May 2007 that the injunctions could be enforced is

baseless given this affirmative defense.  It is evident that

Defendants were aware of the details of the injunctions, to which they

assert they are bound, even before this federal action was filed, and

their contrary assertions are belied by the record.  Since Defendants

have failed to show that good cause justifies the amendment they seek,

their motion to amend is denied.[3]

---

[3]     Defendants' argument that joinder of the Central Valley
Parties is warranted to prevent contradictory rulings against Defendants
is also unavailing.  (Defs.' Mot. to Amend at 2:13-23.)  Preventing
contradictory rulings is not a proper basis for a Rule 20 motion.  Even
if the Central Valley Parties are necessary to prevent inconsistent
obligations under Rule 19(a)(2)(ii), the Advisory Committee Notes to the
1966 Amendment state that a plaintiff's "undue delay in making the
motion can properly be counted against him as a reason for denying the
motion."  The Court declines to act sua sponte under Rule 19 since the
Central Valley Parties' interests have not been shown to be threatened
and no party has made a timely motion for joinder under Rule 19.
Further, the Central Valley Parties are not necessary parties under Rule
19(a)(2)(i) because their interests are "adequately represented by
existing parties to the suit."  Wash. v. Daley, 173 F.3d 1158, 1167-68
(continued...)

1  II.   Motions for Summary Judgment

2        A.   Requirement for Complete CHRI

3              Plaintiff seeks summary judgment on its claim that

4  Defendants' policy of denying OPM information regarding nonconviction

5  arrests or arrests later reclassified as detentions, and the state

6  laws upon which this policy is based, are preempted by federal law

7  prescribed in Chapter 91 of the United States Code, Access to Criminal

8  History Records for National Security, codified at 5 U.S.C. § 9101

9  ("Chapter 91").  Plaintiff argues "[f]ederal law expressly requires

10 states to provide full and complete CHRI to OPM investigators, and any

11 state law to the contrary is preempted by federal law. . . ."   (Pl.'s

12 Mot. for Summ. J. at 20:18-19.)  Plaintiff requests that Defendants be

13                permanently enjoined from refusing to comply with
                  any such request by OPM staff and/or contract
14                background investigators for CHRI made pursuant to
                  5 U.S.C. § 9101[; and that] Defendants [be]
15                permanently enjoined from directing or encouraging
                  any California criminal justice agency from
16                refusing to fully comply with such request for
                  CHRI by OPM staff and/or contract background
17                investigators made pursuant to 5 U.S.C. § 9101.

18 (Pl.'s Proposed Order at 3:6-11.)

19              Defendants rejoin that their policy is not preempted because

20 Chapter 91 does not require disclosure of arrests later classified as

21 detentions under California Penal Code sections 849(c), 849.5 and

22 11115, and that Chapter 91 is limited by the arrestee's right to

23 privacy guaranteed by the California Constitution and the United

24 States Constitution.  (Defs.' Mot. for Summ. J. at 4-5, 11:23-12:20,

25 8:22-9:3; Tr. of Oral Argument at 10.)  Defendants also argue that

26

27
        [3](...continued)
28 (9th Cir. 1999).

1  California Labor Code section 432.7 bars employers from asking for

2  nonconviction arrest information.  (Defs.' Mot. for Summ. J. 4:24-

3  5:4.)

4           In determining whether a federal statute preempts
            state law, our sole task is to ascertain the
5           intent of Congress. . . .  We must begin with the
            presumption that Congress did not intend to
6           preempt state law. . . .  If we have any doubt
            about congressional intent, we are to err on the
7           side of caution, finding no preemption, "for the
            state is powerless to remove the ill effects of
8           our decision, while the national government, which
            has the ultimate power, remains free to remove the
9           burden."

10  Malabed v. N. Slope Borough, 335 F.3d 864, 869 (9th Cir. 2003)

11  (quoting Beveridge v. Lewis, 939 F.2d 859, 863 (9th Cir. 1991))

12  (other internal citations omitted).  "Congressional intent to preempt

13  state law must be clear and manifest."  Williamson v. Gen. Dynamics

14  Corp., 208 F.3d 1144, 1150 (9th Cir. 2000).

15          "Preemption may be found if, on the face of the federal

16  statute, Congress expressly stated an intent to preempt a state law."

17  N.J. State Chamber of Commerce v. Hughey, 774 F.2d 587, 592 (3d Cir.

18  1985) (citing Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458

19  U.S. 141, 152-53 (1982)).  Congress prescribes in 5 U.S.C. §

20  9101(b)(4) that Chapter 91 "shall apply notwithstanding any other

21  provision of law or regulation of any State or of any locality within

22  a State or any other law of the United States."  This clause clearly

23  expresses Congress's intent that Chapter 91 preempt any contrary state

24  law.  When, as here,

25          we are presented with the task of interpreting a
            statutory provision that expressly pre-empts state
26          law[,] we must . . . identify the domain expressly
            preempted . . . by that language.  Although our
27          analysis of the scope of the pre-emption statute
            must begin with its text, . . . our interpretation
28          of that language does not occur in a contextual
            vacuum.  [Rather,] our analysis of the scope of

> the statute's pre-emption is guided by . . . [an] understanding of congressional purpose. . . . Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the "statutory framework" surrounding it. . . . Also relevant, however, is the "structure and purpose of the statute as a whole," . . . as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme

to enable the Federal Government to access criminal history records for national security and other sensitive purposes.  <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 484-86 (1996).

The text of Chapter 91 makes it pellucid that Congress, in the text of the statute and in the regulatory scheme, intended Chapter 91 to supersede and be the supreme definition of what constitutes CHRI.  Chapter 91's regulatory scheme prescribes:

> Upon request by the head of a covered agency, criminal justice agencies shall make available [CHRI] regarding individuals under investigation by that covered agency for the purpose of determining eligibility for any of the following: (A) Access to classified information. (B) Assignment to or retention in sensitive national security duties. (C) Acceptance or retention in the armed forces. (D) Appointment, retention, or assignment to a position of public trust or a critical or sensitive position while either employed by the Government or performing a Government contract.[4]

5 U.S.C. § 9101(b)(1).  "The term [CHRI] means information collected by criminal justice agencies on individuals consisting of identifiable descriptions and notions of arrests, indictments, information, or other formal criminal charges, and any disposition arising therefrom,

---

[4]      OPM is a "covered agency" within the meaning of Chapter 91. 5 U.S.C. § 9101(a)(6)(D).

1  sentencing, correction supervision, and release."  Id. § 9101(a)(2).

2  Section 9101(a)(2)'s definition of CHRI is unambiguous.

3       Accordingly, the California policy of providing only

4  "summary CHRI" to OPM violates Chapter 91's command to provide

5  complete CHRI as defined in § 9101(a)(2).[5]  Therefore, California laws

6  are expressly preempted to the extent that, when a request is made for

7  complete CHRI pursuant to the authority of OPM under Chapter 91, they

8  purport to prohibit release of complete CHRI to OPM.[6]  "This situation

9  presents the quintessential case of the Supremacy Clause in action."

10  Forest Park II v. Hadley, 336 F.3d 724, 732 (8th Cir. 2003) (citing

11  U.S. Const. art. VI, cl. 2).

12       Further, Defendants have not shown that Chapter 91 is

13  unconstitutional based on Defendants' argument that it violates an

14  arrestee's federal constitutional right to privacy.[7]   "While the

15

16       [5]   An arrest that has later been reclassified under California
law as something other than an arrest constitutes a "disposition arising
17  therefrom" and therefore falls squarely within § 9101(a)(2)'s meaning of
CHRI.
18

19       [6]   Defendants' argument that they are bound by the injunctions
forbidding the release of complete CHRI is misplaced.  First, the
20  injunctions issued before Chapter 91 was enacted in December of 1985 and
therefore they do not address this prescribed federal law.  Second, even
21  if this ruling conflicts with the state injunctions, Defendants' remedy
would be to seek to have those injunctions vacated.  See Brunzell
22  Constr. Co. v. Harrah's Club, 253 Cal. App. 2d 764, 772 (1976) (noting
that the court has inherent power to vacate or modify its injunction
23  when the "the law has been changed, modified or extended, or where the
ends of justice would be served. . . ."); Holmes v. Cal. Nat'l Guard, 90
24  Cal. App. 4th 297, 319 (2001) ("[T]he trial court's ruling is open to
possible misinterpretation in ways which could lead its injunctions to
25  encroach on areas clearly preempted by federal law.  In order to avoid
such potentially serious pitfalls of misinterpretation, we therefore
26  hold that the language and scope of the trial court's rulings must be
explicitly limited" to conform with federal law.).
27

28       [7]   Defendants   also   make   a   conclusory   argument   that   the
(continued...)

1  Supreme Court has expressed uncertainty regarding the precise bounds

2  of the constitutional 'zone of privacy'" it has recognized that an

3  individual has an "interest in avoiding disclosure of personal

4  matters."  In re Crawford v. United States Tr., 194 F.3d 954, 958 (9th

5  Cir. 1999).  This interest is "sometimes referred to as the right of

6  'informational privacy.'"  Id.  The right to informational privacy,

7  "is not absolute; rather, it is a conditional right which may be

8  infringed upon a showing of proper governmental interest."  Id. at 959

9  (quoting Doe v. Attorney Gen., 941 F.2d 780, 796 (9th Cir. 1991)).  A

10 "delicate task of weighing competing interests [is involved when]

11 determin[ing] whether the government may properly [seek] private

12 information" concerning an applicant for federal employment.  Id.

13 (internal quotations omitted).  "[T]he government has the burden of

14 showing that its use of the information would advance a legitimate

15 state interest and that its actions are narrowly tailored to meet the

16 legitimate interest."  Id. (internal quotations omitted).  Relevant

17 factors in this analysis include:

18             the type of record requested, the information it
              does or might contain, the potential for harm in
19            any subsequent nonconsensual disclosure, the
              injury from disclosure to the relationship in
20            which the record was generated, the adequacy of
              safeguards to prevent unauthorized disclosure, the
21            degree of need for access, and whether there is an
              express statutory mandate, articulated public
22            policy, or other recognizable public interest
              militating toward access.

23

24

25

26     [7](...continued)
   California  constitutional  right  to  privacy  prevents  disclosure  of
27 complete CHRI under Chapter 91; however, that argument is unsupported
   and  woefully  inadequate  to  counter  the  express  preemption  provision
28 prescribing that California law prohibiting compliance with Chapter 91
   is preempted.

1   Id. (quoting Doe v. Attorney Gen., 941 F.2d at 796).

2        Here, the government has a legitimate interest in

3 determining the suitability of individuals seeking access to

4 classified information and employment in sensitive national security

5 positions.  Arrest records advance that interest because "arrest-

6 related information tends to reveal behavior and sometimes patterns of

7 behavior," and "may indicate involvement in criminal or dishonest

8 activities."  (Czajkowski Decl. ¶ 11.)  Chapter 91 is narrowly

9 tailored to meet the government's interest in that it limits the types

10 of government jobs that require CHRI for background checks, and it

11 requires an agency to receive written consent for the release of CHRI

12 from an individual under investigation.  5 U.S.C. § 9101(b)(1)(A)-(D),

13 (c).  Further, adequate safeguards are in place to prevent

14 unauthorized disclosure of CHRI.  Federal employees and contract

15 investigators must themselves be cleared for access to CHRI and

16 numerous security standards govern how CHRI is stored and handled.

17 (Tincher-Harris Decl. ¶¶ 9, 11.)  Finally, Chapter 91 is, of course,

18 an express statutory mandate from Congress that CHRI be made

19 available.

20        These factors outweigh the potential harm an individual

21 might face if his or her CHRI was disclosed subsequently, such as

22 "denial of schooling, employment and professional licensing

23 opportunities."  (Defs.' Mot. for Summ. J. at 10:20-23.)  Accordingly,

24 the United States Constitution does not limit the preemptive effect of

25 Chapter 91.

26     B.    OPM's Contract Investigators

27        Plaintiff also seeks summary judgment on its claim that

28 Defendants must disclose CHRI to OPM's contract background

investigators, arguing that "[b]oth express preemption and conflict

preemption apply in this matter, rendering defendants' policy and

practice of denying full and complete CHRI to OPM . . . contract

investigators preempted by federal law. . . ."  (Pl.'s Mot. for Summ.

J. at 18:11-13.)  Defendants rejoin that California Penal Code

sections 11105(c)(4) and 13300(c)(4) prescribe that CHRI may only be

released to public officers, and that "§ 9101 does not require the

disclosure of this information to OPM's private contractors."  (Defs.'

Mot. for Summ. J. at 12:23-25.)

1.   Express Preemption

Chapter 91 provides that "[u]pon request by the head of a

covered agency, criminal justice agencies shall make available

[CHRI]."  5 U.S.C. § 9101(b)(1).  Defendants do not dispute that

requests for CHRI are being made *by* the head of OPM.  Defendants

argue, however, that Chapter 91 does not require disclosure of CHRI *to*

contract investigators.  (Defs.' Mot. for Summ. J. at 12:23-25.)

To decide this issue, Congress's intent is discerned.

Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit

Servs., Inc., 448 F.3d 1092 (9th Cir. 2006).  The legislative history

of Chapter 91 evinces that Congress intended to authorize private

contract investigators to have access to CHRI.  Congress enacted

Chapter 91 after the Subcommittee on Investigations of the Senate

Committee on Governmental Affairs held four days of hearings on

"Federal Government Security Clearance Programs."  See Pub. L. 99-169,

Title VII, § 801(a), Dec. 4, 1985, 99 Stat. 1008; see also Federal

Government Security Clearance Programs Hearings Before the Permanent

Subcomm. on Investigations of the Senate Comm. on Governmental

Affairs, 99th Cong. (1985) ("1985 Hearings").  During the hearings,

1 Congress clearly considered and approved that many background

2 investigations under Chapter 91 would be conducted by contract

3 investigators.  Congress was informed at the 1985 Hearings that the

4 Department of State employed contract investigators, and that OPM was

5 also planning to employ contract investigators.  1985 Hearings at 198,

6 202, 255-57, 284, 287-90, 967.  The OPM Director at the time

7 testified:

8            [M]ost importantly in a major change [of] policy,
            we have been moving to a concept of a corps of
9            permanent investigators consisting of OPM
            employees supplemented by an expanding contractor
10           relationship with outside investigators, many of
            them previous OPM investigat[ors].  This measure
11           is the only way we can meet the recurring surges
            and declines in work load without significant
12           disruptions. . . . I have commenced solicitation
            of proposals from private contractors to perform
13           part of the investigations and transcription
            workload.

14

15 Id. at 198, 256.

16          Senators also expressed approval of the cost savings that

17 resulted from contracting out background investigations.  Senator Nunn

18 observed "we heard testimony yesterday that the State Department had

19 contracted out their investigative services at a cost of approximately

20 $900 per personnel case."  Id. at 287-88.  The Senate Committee also

21 generated the following written question for OPM: "Should other

22 civilian agencies contract out [their background investigations] like

23 the State Department to get the same quality [of] work cheaper and

24 faster than with OPM?"  Id. at 681.  The Committee's final report on

25 the 1985 Hearings, Federal Government Security Clearance

26 Investigations, noted that

27            [t]o meet uneven demand, the Office of Personnel
            Management and the Department of State have
28           instituted plans of contracting with experienced
            outside investigators who can be called upon

14

1          during surge periods, thus delivering adequate
           investigative products without unnecessarily
2          expanding the federal workforce.  All agencies
           responsible for conducting personnel security
3          investigations should examine the feasibility of,
           and consider following this procedure during surge
4          periods.

5    132 Cong. Rec. S199-01 ¶ 20.

6          Congress enacted Chapter 91 partially in reaction to state

7    and local governments' frequent refusal to make CHRI available.  1985

8    Hearings at 3, 9, 188, 270-73, 419, 446.  Congress knew that contract

9    investigators were conducting background investigations and would

10   continue to do so in the future.  Therefore, Congress intended that

11   CHRI be made available to contract, as well as government,

12   investigators upon request by the head of a covered agency.  If

13   Congress had intended otherwise, it could have easily specified in

14   § 9101(b)(1) *to whom* criminal justice agencies shall make CHRI

15   available.  California laws that deny contract investigators access to

16   CHRI are therefore preempted by Congress's express intent that Chapter

17   91 be the supreme law in the United States and that it "shall apply

18   notwithstanding any other provision of law. . . ."  5 U.S.C. §

19   9101(b)(4).  "[T]he principal problem with these statutes [is that]

20   they fly in the face of the Constitution's Supremacy Clause."  Forest

21   Park II v. Hadley, 336 F.3d at 732.

22             2.   Conflict Preemption

23        "Even if there were no express pre-emption in this case,"

24   the state laws at issue would be preempted because they conflict with

25   federal regulations.  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133,

26   142 (1990) (applying both express preemption and conflict preemption).

27   Plaintiff argues that Defendants are also required to make CHRI

28   available to OPM contract investigators because California law

1  authorizing the release of CHRI only to "public officers" conflicts

2  with the Federal Acquisition Regulations ("FAR") 48 C.F.R. § 1.000 *et*

3  *seq.* and is therefore preempted.  (Pl.'s Mot. for Summ. J. at 27:14-

4  19.)  Defendants rejoin that California law does not conflict with the

5  FAR because it allows CHRI to be released to OPM officials who can

6  conduct background investigations on their own.  (Defs.' Mot. for

7  Summ. J. at 13:12-17.)

8         The FAR prescribe that "[u]nless specifically prohibited by

9  another provision of law, authority and responsibility to contract for

10  authorized supplies and services are vested in the agency head.  The

11  agency head may establish contracting activities and delegate broad

12  authority to manage the agency's contracting functions to heads of

13  such contracting activities."  48 C.F.R § 1.601.  The FAR include

14  several other provisions requiring OPM to determine that contractors

15  are "responsible" and "otherwise qualified and eligible."  Id.

16  §§ 9.103(b), 9.104, 9.104-1(d).  Pursuant to these sections of the

17  FAR, the Director of OPM has established acquisition plans for

18  background investigation contracts and has established necessary

19  contractor  qualifications and contract terms.  (Decl. of Linda

20  Springer in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 5-7; Tincher-Harris

21  Decl. ¶¶ 9-10.)

22         The enforcement of a state law may be preempted "when

23  compliance with both state and federal law is impossible, . . . or

24  when state law 'stands as an obstacle to the accomplishment and

25  execution of the full purposes and objectives of Congress.'"  Capital

26  Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-99 (1984) (citing Fl.

27  Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963) &

28  quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  "[S]tate

statutes may not interfere with the implementation of a federal
program by a federal agency.  Federal law is supreme."  <u>Forest Park II</u>
<u>v. Hadley</u>, 336 F.3d at 732.  Valid "[f]ederal regulations have no less
pre-emptive effect than federal statutes."[8]  <u>Fidelity Fed. Sav. & Loan</u>
<u>Ass'n</u>, 458 U.S. at 153.

        The California laws Defendants argue are at issue here
improperly attempt to "second guess" OPM's determination of contractor
responsibility by refusing to make CHRI available to contract
investigators and insisting that only government officials are
qualified to handle such information.  <u>United States v. Virginia</u>, 139
F.3d 984, 988 (1998) (holding that a Virginia regulatory scheme which
required the Federal Bureau of Investigations ("FBI") to register its
contract background investigators "frustrate[d] the objectives of the
[FRA] by allowing the state to 'second-guess' the FBI's responsibility
determination and by giving the state licensing board 'a virtual power
of review over the federal determination of "responsibility."'");
<u>Leslie Miller, Inc. v. Arkansas</u>, 352 U.S. 187, 188-190 (1956) (holding
that the Armed Services Procurement Act, which also requires
government agencies to award contracts to a "responsible bidder,"
preempted an Arkansas law requiring government contractors to be
licensed by a state board because "[s]ubjecting a federal contractor
to Arkansas contractor license requirements would give the State's
licensing board a virtual power of review over the federal
determination of 'responsibility' and would thus frustrate the

---

        [8]    Defendants do not challenge the validity of 48 C.F.R. § 1.601,
the validity of which was implicitly recognized by the Fourth Circuit in
<u>United States v. Virginia</u>, 139 F.3d 984, 986 (4th Cir. 1998).

1    expressed federal policy of selecting the lowest responsible

2    bidder.").

3         The California DOJ asserted in its April 2006 letter to OPM

4    that because "the [California Penal Code] does not make any provision

5    for contract employees to obtain state or local summary criminal

6    history information, OPM's contract investigators are not authorized

7    to receive or have access to California state or local summary

8    criminal history information." (Pl's. Compl. Ex. 1.)  California

9    DOJ's assertion that OPM's contractors must be authorized by the state

10   to receive CHRI "runs afoul of the Supreme Court's holding that

11   federal contractors cannot be required to satisfy state

12   'qualifications in addition to those that the [Federal] Government has

13   pronounced sufficient.'"  United States v. Virginia, 139 F.3d at 990

14   (quoting Leslie Miller, Inc., 352 U.S. at 190).  Accordingly,

15   California laws that deny contract investigators access to CHRI are

16   preempted by the FAR.

17        C.    Permanent Injunction

18        Accordingly, pursuant to the Supremacy Clause of the United

19   States Constitution (Article VI, Clause 2), the following permanent

20   injunction enters against each Defendant forthwith:

21        Defendants shall immediately upon request made under 5

22   U.S.C. § 9101 by OPM and/or any of its contract background

23   investigators, provide full and complete CHRI to OPM and/or its

24   contract background investigators, which shall include any arrest,

25   including an arrest that is, or has been, subsequently reclassified as

26   something other than an arrest under California law.  Further,

27   Defendants are enjoined from refusing to comply with any such request.

28   Defendants are also enjoined from directing or encouraging any

California criminal justice agency to refuse full compliance with any

request for CHRI made under 5 U.S.C. § 9101 by OPM and/or its contract

background investigators.  To the extent Defendants have in the past

made any such communication, Defendants shall rescind and withdraw

that communication from any such California criminal justice agency.

CONCLUSION

For the stated reasons, Defendants' motion to amend the Rule

16 Scheduling Order is denied, Defendants' motion for summary judgment

is denied, Plaintiff's motion for summary judgment is granted, and the

above stated permanent injunction enters against each Defendant.  The

Clerk of the Court shall enter judgment in favor of Plaintiff and

close this action.

IT IS SO ORDERED.

Dated:  November 7, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge