IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
UNITED STATES OF AMERICA,      )
                               )   2:06-cv-2649-GEB-GGH
              Plaintiff,       )
                               )
     v.                        )   ORDER
                               )
THE STATE OF CALIFORNIA, and   )
EDMUND G. BROWN, JR., in his   )
capacity as Attorney General for )
the State of California,       )
                               )
              Defendants.      )
                               )
```

George Turner, Juan Morales, and Eric Thiele ("Applicants"), move to intervene in this action for purposes of appeal.[1] Plaintiff, the United States, opposes the motions. Defendants, the State of California and Attorney General Edmund G. Brown, Jr., do not oppose the motions, concluding that "[t]he Proposed Intervenors have the real

---

[1] Mr. Turner and Mr. Morales jointly filed their motions ("Mot.") on January 10, 2008. Mr. Thiele filed his motion ("Thiele Mot.") on January 17, 2008.

1

interest" in the issues involved in this action. Oral arguments were heard on February 4, 2008.

BACKGROUND

Applicants seek to intervene so they can appeal from the judgment entered in favor of Plaintiff on its permanent injunction claim. This judgment entered following the Order filed on November 8, 2007 ("the November 8 Order"), which granted Plaintiff's Motion for Summary Judgment. Plaintiff filed this action on behalf of the Office of Personnel Management ("OPM"), asserting federal law prescribed in 5 U.S.C. § 9101 ("§ 9101") requires Defendants to disclose an individual's complete criminal history record information ("CHRI") to OPM and its contract investigators conducting background investigations for employment, contracting and security clearance purposes.

The deadline for filing a notice of appeal from the judgment was January 7, 2008. On December 19, 2007, counsel for Applicants learned that Defendants had chosen not to pursue an appeal of the November 8 Order. (Decl. of Peter Sheehan in Supp. of Ex Parte Emergency Mot. of Turner and Morales for Extension of Time to File Notice of Appeal, Docket # 34.) On January 7, 2008, George Turner and Juan Morales moved for and were granted an extension of time to file a notice of appeal; therefore, the time to file a notice of appeal was extended thirty days.

ANALYSIS

Plaintiff argues Applicants lack Article III standing and, therefore, their motions should be denied. (Opp'n at 2:8-11.) When there is no appeal from an existing party, an applicant seeking intervention for purposes of appeal must have standing under Article

III of the United States Constitution. <u>Diamond v. Charles</u>, 476 U.S. 54, 68 (1986); <u>Legal Aid Soc'y of Alameda County v. Brennan</u>, 608 F.2d 1319, 1328 n.9 (9th Cir. 1979). To establish standing, Applicants must show: (1) "an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) a causal connection between the injury and the challenged conduct; and (3) that the injury is likely to be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). To establish an injury in fact for purposes of appeal, Applicants must show "a threat of particularized injury from the [November 8 Order] that would be avoided or redressed if their appeal succeeds." <u>Brennan</u>, 608 F.2d at 1328. "The party invoking federal jurisdiction bears the burden of establishing these elements." <u>Lujan,</u> 504 U.S. at 561.

I. <u>Mr. Turner</u>

Mr. Turner, who was a party to an earlier state court action that resulted in an injunction which forbids Defendants from disclosing certain arrest records that the November 8 Order requires Defendants to disclose, argues he has standing to intervene in this action

> as one of the persons in whose favor the [earlier state court] judgment was issued, who can enforce its provisions . . . and who is guaranteed, under California law, that the judgment will not be modified or changed absent compliance with California law regarding modification [because the] state can create interests, the invasion of which may confer standing.

(Mot. at 11:6-11; <u>see also</u> Nov. 8, 2007 Order at 2.) Plaintiff rejoins that a threat to Mr. Turner's ability to enforce the earlier

3

2 state court injunction is not "'a judicially cognizable injury.'"
3 (Opp'n at 6:2-5 (citing <u>Schlesinger v. Reservists Comm. to Stop the
4 War</u>, 418 U.S. 208, 227 n.16 (1974); <u>Brennan</u>, 608 F.2d at 1328).)
5 Plaintiff further argues that Mr. Turner is not affected or harmed by
6 the November 8 Order, which requires Defendants to provide full and
7 complete CHRI to OPM background investigators upon request made
8 pursuant to 5 U.S.C. § 9101, since "Mr. Turner does not claim to be
9 seeking federal employment (or be subject to any other category for
10 which CHRI is to be provided pursuant to [§ 9101])." (<u>Id.</u> at 5:24-
11 6:1.)

12 Mr. Turner has not shown that the indirect threat to his
13 ability to enforce the state court injunction he references provides
14 him with Article III standing. Therefore, Mr. Turner's motion to
15 intervene is denied.

16 <u>II. Mr. Thiele and Mr. Morales</u>

17 Mr. Thiele also contends he has Article III standing,
18 declaring he "plan[s] to apply for federal employment in several
19 positions in the next twelve to eighteen months [including] addiction
20 therapist, community planner, and passport specialist[; and he does]
21 not wish [his] detention record to be disclosed in connection with
22 such an application . . . ." (Thiele Decl. ¶ 4.) Mr. Thiele further
23 declares that in July of 2006 he "was detained by the Los Angeles
24 County Sheriff's Department for investigation regarding California
25 Health and Safety Code § 11350(a) . . . . No charges were filed
26 against [him], it was determined that there was no basis to charge
27 [him], and [he] was given a 'Certificate of Release/Clearance Letter'
28 by the Los Angeles County Sheriff's Department." (<u>Id.</u> ¶ 2.) The
Certificate of Release/Clearance Letter states that the arrest was a

4

2 | "detention only" pursuant to California Penal Code section 849.
3 | (Supp. Decl. of Eric Thiele, Ex. 1.)
4 |         Mr. Morales also argues he has Article III standing,
5 |         declaring he was
6 |         detained in 1991 by the police for an alleged
          "robbery" and then released without the filing of
7 |         charges. The police found [he] was "exonerated"
          of the charges. The California state rap sheet
8 |         [he has] seen regarding this incident indicates a
          detention with a "charge" of "robbery" and
9 |         reference to "rel/det only/arrestee exonerated."
10 | (Morales Decl. ¶ 2.)  Mr. Morales further declares that he is
11 | "interested and intend[s] within the next year to apply for employment
12 | positions with the National Park Service, clerical positions with
13 | other federal agencies (including the Internal Revenue Service), and
14 | for positions which [he is] eligible with other federal agencies."
15 | (Id. ¶ 3.)

Injury in Fact

         Applicants Mr. Morales and Mr. Theile[2] argue that they have each suffered an "injury in fact" sufficient to establish Article III standing because Congress "specifically did not intend to subject detained persons to the § 9101 process" and the disclosure of their detention information "deprives [them] 'of a fair opportunity to be evaluated for employment in the manner prescribed by law[,' and] 'erects a barrier that makes it more difficult for [them] to obtain a benefit than it is for members of another group.'"  (Mot. at 10:12-15, 8:16-23 (quoting Preston v. Heckler, 734 F.2d 1359, 1366 (9th Cir. 1984); Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 666 (1978)).)

---

    [2]    Mr. Thiele incorporated Mr. Turner and Mr. Morales's legal arguments in his motion to intervene.  (Thiele Mot. at 2:5-6.)

5

An initial issue is whether the information contained in the CHRI of Mr. Thiele and Mr. Morales falls within the CHRI that must be disclosed to OPM pursuant to § 9101.  Plaintiff argues that "it does not appear that the contents of Mr. Morales'[s] rap sheet even fall within the CHRI that is disclosed to OPM pursuant to [§ 9101 because § 9101] does not apply to detentions . . . .  Similarly, [Mr. Thiele] asserts he has 'never been arrested,' but only 'detained.'"  (Opp'n at 6:9-20.)

Section 9101(a)(2) prescribes: "The term [CHRI] means information collected by criminal justice agencies on individuals consisting of identifiable descriptions and notations of arrests, indictments, informations, or other formal criminal charges, and any disposition arising therefrom, sentencing, correction supervision, and release."  The November 8 Order enjoined Defendants to

> immediately upon request made under 5 U.S.C. § 9101 by OPM and/or any of its contract background investigators, provide full and complete CHRI to OPM and/or its contract background investigators, which shall include any arrest, including an arrest that is, or has been, subsequently reclassified as something other than an arrest under California law.

(Nov. 8, 2007 Order at 18:21-26.)

Because Mr. Morales's rap sheet contains the reference "rel/det only/arrestee exonerated," his CHRI appears to include a record of an arrest that was later deemed a detention and would therefore fall within the CHRI that must be disclosed to OPM pursuant to § 9101.  Likewise, Mr. Thiele's "arrest[] without a warrant," which was recorded as a detention pursuant to California Penal Code section 849, would fall within the parameters of § 9101. (See Supp. Decl. of

Eric Thiele, Ex. 1 (Certificate of Release) (quoting Cal. Penal Code § 849).)

Plaintiff also argues that "[e]ven if the contents of Mr. Morales' and Mr. Theile's rap sheets fall within the parameters of [§ 9101,]" Applicants only contend that they intend to apply for positions with the federal government in twelve to eighteen months and "[t]hese assertions of future hypothetical injury – which would occur only after Mr. Morales and Mr. Thiele applied for a federal job, were selected, underwent background investigations, and were found unsuitable – are too speculative to confer Article III standing." (Opp'n at 6:20-25, 7:1-2.)  Plaintiff argues that the speculative nature of Mr. Morales and Mr. Thiele's injuries is further evinced by the fact that "OPM conducts different levels of investigations for various types of positions or clearances in the federal government [and] the degree to which the subject's CHRI is investigated [varies accordingly, and] it is also possible that an applicant's file is adjudicated favorably, notwithstanding CHRI."  (Id. at 7:3-11.) Plaintiff concludes that Mr. Morales and Mr. Thiele's arguments regarding their deprivation of a "fair opportunity to be evaluated for employment . . . are therefore inapposite, as there is no way of knowing how their applications would be assessed without knowing the type of job or clearance level sought."  (Id. at 7:12-15.)

Mr. Morales and Mr. Thiele have not shown that their alleged threatened injuries are "actual or imminent."  "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes-that the injury is '*certainly* impending.'"  Lujan, 504 U.S. at 564 n.2.  Unlike the facts in the

7

cases upon which Applicants rely, Mr. Thiele and Mr. Morales have not yet applied for a specific job with the federal government.[3]  See Preston, 734 F.2d at 1363, 1366 (plaintiff had applied for and was denied a position and was a "bona fide applicant for the position in question."); Glacial Park Found. v. Watt, 663 F.2d 882, 884 (9th Cir. 1981) (plaintiffs had submitted proposals which were rejected); Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 277 (1978) (plaintiff twice applied to and was rejected by medical school); Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton, 422 F.3d 490, 496 (7th Cir. 2005) (plaintiff had an application pending).  Even though courts have held that a plaintiff has Article III standing without having applied for the position when a challenged practice or law acts as a complete barrier to being able to compete for a position, Applicants have not demonstrated that they are disqualified from competing for a position because of anything in their CHRI, and they have not declared that they would have applied for a position "were it not for the consequences of doing so." Northeastern Fla., 508 U.S. at 664, 666 (contractor that can "demonstrate that it is able and ready to bid on contracts" has standing to challenge a minority "set-aside program"); see also Turner v. Fouche, 396 U.S. 346, 348, 361 n.23 (1970) (non property owner had standing to challenge law under which members of school board were required to be property owners).

        Contrary to their assertions, Applicants also fail to demonstrate that they are "'able and ready'" to apply for federal

---

[3] Of course, Applicants are not required to show that they would have received the position absent the requirements of § 9101.  See Northeastern Fla., 508 U.S. at 658 (holding it is not necessary, "in order to have standing to challenge [an] ordinance, [for plaintiffs] to show that one of its members would have received a contract absent the ordinance.").

employment and that an allegedly illegal policy "'prevents [them] from doing so on an equal basis.'" Bras v. Cal. Pub. Utils. Comm'n, 59 F.3d 869, 873 (9th Cir. 1995) (quoting Northeastern Fla., 508 U.S. at 666); see also Adarand Constructors, Inc., 515 U.S. 205, 211 (1995) (finding standing for "forward-looking relief" for a company that "bids on every guardrail project in Colorado" and at least once a year is "very likely" to compete for a contract that "present[s] the kind of injury [the company] alleges."). Applicants have not explained why, if they are ready and able to apply for federal government positions currently available, they have not done so already. Moreover, nothing guarantees that the positions they identify will still be open in twelve months, making it even more speculative that they will ever apply for the positions or that they will actually suffer an injury in fact.[4]

In addition, applicants have not shown how release of their CHRI will disadvantage them. The Deputy Associate Director for Services, in the Federal Investigative Services Division of OPM has declared: "CHRI, including a record of an arrest that did not result in a conviction, **may** be considered a disqualifying factor in both a suitability investigation and a national security investigation." (Pl.'s Mot. for Summ. J., Docket #12, Attachment #1, Ex. 4 (Czajkowski Decl.) ¶ 6 (emphasis added).) However, Applicants have not shown that their CHRI would be a disqualifying factor, or disadvantage them in

---

[4] Indeed the job description submitted by Mr. Thiele for passport specialist indicates that the period for application will close on June 9, 2008. (Supp. Decl. of Eric Thiele, Ex. 2 (Passport Specialist job description).)

9

applying for a specific job.[5] In other words, even if the records of their arrests (that have since been deemed something other than an arrest) are disclosed in a background check, Mr. Thiele and Mr. Morales may still be able to compete equally with other applicants.

Therefore, niether Mr. Morales nor Mr. Thiele has demonstrated an injury in fact. "Instead, [they] present[] a generalized grievance" and "[t]he Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient to confer standing." Carrol v. Nakatani, 342 F.3d 934, 940, 943 (9th Cir. 2003) (plaintiff's "declaration of 'interest' in starting a copy shop, and submission of a meritless application falls short of being 'able and ready' to compete."). Accordingly, Mr. Thiele and Mr. Morales's motions to intervene are denied.

## SUMMARY

For the reasons stated, the motions to intervene are denied.

IT IS SO ORDERED.

Dated: February 6, 2008

GARLAND E. BURRELL, JR.
United States District Judge

---

[5] One of the jobs Mr. Thiele will apply for lists as a "Key requirement[]" that he "[m]ust be able to maintain a high risk public trust clearance." (Supp. Decl. of Eric Thiele, Ex. 2 (Passport Specialist job description).) However, there is no evidence regarding what this would require.

10